DUNN, Appellant, v. NORTH MISSOURI RAILROAD *et al.*, Respondent.

1. Where work and labor are performed upon, or materials furnished for, the construction of bridges and culverts upon the line of a public railroad authorized by an act of the state legislature, no lien upon said bridges and culverts is conferred upon the material man or laborer by the act of February 24th, 1843, (Sess. Acts, 1843, p. 83,) "for the better security of mechanics and others erecting buildings, or furnishing materials for the same, in the city and county of St. Louis."

*Appeal from St. Louis Land Court.*

This was an action by *scire facias* to enforce a lien alleged by plaintiff to exist upon certain culverts belonging to the North Missouri Railroad Company, for the construction of which plaintiff had furnished materials, and upon which he had performed work and labor. The defendants demurred to the writ on the ground that there was " no law authorizing a lien on the culverts of a railroad." The demurrer was sustained.

*Bland & Colman*, for appellant, cited Sess. Acts, 1843, p. 83 ; 5 Rawle, 313 ; Sess. Acts, 1857, p. 668.

*McClellan & Hillyer*, for respondents.

SCOTT, Judge, delivered the opinion of the court.

The question in this case does not turn on the signification of the words, "buildings or other improvements" in the first section of the   of February 24th, 1843, for the security of

32—VC   XXIV.

mechanics and others erecting buildings or furnishing materials in St. Louis county. It might be conceded that those words are sufficiently comprehensive to include bridges and culverts, and still the question would recur, whether a material man or laborer, under the above mentioned act, has a lien for materials furnished or services rendered in the construction of a public railway authorized by an act of the general assembly.

Although railroad companies, in some respects, resemble private corporations, yet, as they are organized for the public benefit, the state takes a 'deep interest in them, and regards them as matters of public concern. They are looked upon by the laws as corporations endowed with capacities for the promotion of the public good and for the diffusion of advantages to the state as a body politic. Our constitution requires that internal improvements shall forever be encouraged by the government of the state, and it is her right and duty to advance the commerce and promote the welfare of the people by making or causing them to be made. The establishment of the North Missouri Railroad is regarded as a public work, established by public authority, intended for the public use and benefit, the use of which is secured to the whole community ; and an injury to it is a public injury ; and the public benefit is the ultimate end and purpose of all the powers and privileges conferred by its charter. The only principle on which the legislature could have authorized the taking of private property for its construction, without the owner's consent, is that it was for the public use. After the immense responsibility the state has assumed in building this and other railroads for the public use and convenience, it would be unreasonable to suppose a power remained in any individual to deprive the public of the benefit contemplated by them. A lien, with a power of enforcing it by execution, would enable the lienholder to subject the portion of the road affected by it to execution, and the execution, to be effectual, must confer a title to a purchaser under it. A power to affect by liens to be enforced by executions on public buildings might put it out of the power of the state to possess any public edifices.

Would a mechanic or laborer under the lien law have a right to a lien for materials or services furnished in building a capitol for the state? Shall buildings intended for the public benefit be taken from the public so soon as they are completed, or their completion be prevented by a sale of them, and the state, be forever deprived of buildings for the accommodation of her agents?

It is said that it is better to suffer a mischief which is peculiar to one than an inconvenience which may prejudice many. But this is no mischief to the plaintiff. He would subject the public to this great inconvenience, not because the public is in debt to him, not because he has not the same remedy for his debt that every other member of the community has, but that he may enjoy a privilege conferred on no other class in society. In some of the states, where there was no express exemption from taxation either in the charter of the company or the general law of the states, railways and works of a public character have been exempted from taxation upon principles of public policy. (1. Amer. Rail. Cas. 354.) In thus following out the consequences of the claim set up by the plaintiffs, we do not wish to be understood as expressing any opinion on the question, whether, independently of a statute authority, a railroad built under the authority of the state for public use can be sold under execution.

The subject of securing to laborers payment for work done on railroads has not escaped the attention of the legislature. The act of 24th February, 1853, entitled "An act to authorize the formation of Railroad Associations, and to regulate the same," by its 12th section makes provision for the security of laborers performing service on railroads. Had the idea been entertained that the law of the 24th February, 1843, respecting. mechanics' liens in St. Louis county, was applicable to railroads, the necessity of the provision above referred to would not be so apparent. The other judges concurring, the judgment will be affirmed.