W. Skrainka et al., Appellants, v. M. Rohan et al.,
Respondents.

St. Louis Court of Appeals, June 9, 1885.

1. Railroads—Liens—Mechanics.—A building erected by a railroad
   company to be used as a freight depot and office rooms, on land
   held by it in fee, is not subject to a mechanic's lien under the
   general mechanic's lien law.

2. Agency—Principal and Surety—Contribution.—A surety can
   recover contribution from his co-sureties only when he has been
   compelled to pay the debt of the common principal, and such pay-
   ment is not compulsory unless there is a legal duty to do so which
   may be enforced by judgment and execution.

Appeal from the St. Louis Circuit Court, Horner, J.

*Affirmed.*

DAVID GOLDSMITH, for the appellants: The judgment establishing the lien is conclusive. *Picot v. Signiago*, 27 Mo. 125. The lien having been established as between the sureties and the creditor, has the like effect as between the sureties. *The State to use v. Thornton*, 8 Mo. App. 27. The right to mechanic's lien attached to the building in controversy. *Schulenburg v. Railroad*, 67 Mo. 442; *Hill v. Railroad*, 11 Wis. 214: *Bottsford v. Railroad*, 41 Conn. 454.

SMITH & HARRISON, for the respondents: A surety can recover contribution only where he has paid money on a joint co-liability of himself and his co-surety. Wharton Cont., sect. 765; *Boardman v. Paige*, 11 N. H. 431; *Aspinwall v. Sacchi*, 57 N. Y. 331. The right to a mechanic's lien did not exist against the property in controversy. *Dunn v. Railroad*, 24 Mo. 493; *Schulenberg v. Railroad*, 67 Mo. 442; *McPheeters v. Bridge Co.*, 28 Mo. 465; Philipson Mech. Liens, sect. 180.

LEWIS, P. J., delivered the opinion of the court.

Alexander McCully contracted with the Missouri Pacific railroad company for the furnishing of materials and the construction of stone-work, on land owned by the company, for a large building, a comparatively small part of which was to be used for general offices, and the remainder as a freight depot, into which the cars of the company were to run. He executed a bond to the company, with the present plaintiffs and defendants as his sureties, in the sum of $5,000, with the condition that "the said Alexander McCully shall well and truly do and perform all said work, shall furnish the necessary material, labor, implements, and pay for the same, and shall otherwise well and truly comply with each and all the conditions of said contract, etc." The plaintiffs, a partnership firm, allege that, upon McCully's breach of the condition, they were compelled to pay, and did pay to the obligee because thereof, the sum of $1,683.23, and pray for a judgment compelling the defendants, Rohan and Goetz, their co-sureties, to contri-

bute two thirds of that sum. The judgment was for the defendants.

The plaintiffs were sub-contractors with McCully for furnishing stone, and defendant, Rohan, was a sub-contractor for furnishing sand. Each of them sued McCully for a balance due, and the railroad company, in the same proceeding, for foreclosure of a mechanic's lien on the lot and building. Rohan obtained a personal judgment against McCully for $565, but the lien was denied him as the record states, on two grounds: 1. That it was not lawful to enforce a mechanic's lien against the property of a railway company; and, 2. That Rohan, being a surety on the contractor's bond, could not pursue a lien which the bond was intended to prevent. The present plaintiffs got judgment against McCully for $4,079.44. and their lien claim was settled by agreements with the railway company to the following effect: The company withdrew its opposition to the lien, and waived its right of appeal from the judgment to be rendered thereon. The plaintiffs agreed not to enforce the judgment for a greater amount than the money actually in the company's hands as a balance due to McCully, "until such time as the said Missouri Pacific railway company will have enforced its claim against the sureties of said McCully, or either of them, on the bond herein above mentioned, for the excess that it may be adjudged to pay to said lienors over and above the amount in its hands." The company agreed to "institute such suit against the said sureties, or some of them, at the earliest practicable time, and to push the same to final judgment as speedily as practicable: the said Skrainka and Vieths agreeing to aid it by all legal means to bring about such final adjudication without delay." After entry of the judgment, formal instruments of release and receipt were exchanged by the parties. The release executed by the plaintiffs recited that the company had paid to them in cash the sum of $2,552.01, which was the whole amount due from the company to McCully, and had paid to them the remainder of their judgment, amounting to $4,234.24, by

giving them a receipt for $1,683.23, in full satisfaction of the company's demand against the plaintiffs as sureties on the forfeited bond of McCully. The plaintiffs' release of their lien was declared to be "absolute and not conditional," with the understanding, however, that if it should thereafter appear that an additional sum was due from the company to McCully, such additional sum should be refunded to the plaintiffs, as an overpayment erroneously made by them on their liability as McCully's sureties. The company delivered a receipt to the plaintiffs, acknowledging full satisfaction of their liability on McCully's bond. This transaction constitutes the basis of the plaintiffs' claim for contribution from the defendants.

The right to contribution from co-sureties is strictly confined to cases of compulsory payment by the complaining surety. Compulsion in this sense, does not always mean the actual levy of an execution, or even the rendering of a judgment. If there is a clear legal duty to pay, which may be enforced by judgment and execution, the party is not required to await an additional imposition of costs in the application of those remedies. If a judgment has been recovered against the paying surety, which the co-surety had an opportunity of defending against, it will be binding on such co-surety, and contribution may be enforced, as a general rule. But if the co-surety had no such opportunity for defending, he may attack the judgment with like effect as he might a voluntary payment without it. If he can show that the judgment might have been successfully resisted by proper steps taken in the defence, a payment under it will be treated as a voluntary payment, for which no contribution can be claimed. So, if the payment be made without a judgment, the co-surety may avoid contribution by showing that no judgment could have been obtained against the paying surety, or against himself in a proceeding for that purpose, if properly resisted within the law. On the other hand, the paying surety may enforce contribution, if it be made to appear that he had no means of preventing a judgment against

him, and that the liability was, as is essential in all cases, common to both the sureties. These principles have long been well settled, and are not open to controversy. *Kramph v. Hatz*, 52 Pa. St. 525. *Thomas v. Hubbell*, 15 N. Y. 405. *Lowndes v. Pinckney*, 1 Rich. Eq. 155. Brandt on Sur. and Guar., sect. 232.

The key to the situation in the present case will be found in the single question, whether the plaintiffs, as sub-contractors, could have lawfully enforced their mechanic's lien against the property of the railway company, for what was due them from McCully, the principal contractor. If this be answered in the affirmative, the case will stand thus: The plaintiffs might have their lien judgment against the company for the unpaid balance of $1,683 due from McCully, after deducting the cash paid them. The company would then have an action against the plaintiffs as sureties on McCully's bond, to recover the same amount back again, for breach of the condition that he would pay for all the materials furnished. And since the plaintiffs could not successfully resist this demand of the company, they might pay it, as they did do without waiting for a judgment, and might compel contribution from their co-sureties. But if the same question be answered in the negative all the results become reversed. The lien judgment, not having been resisted, as might have been done with success, but having been voluntarily submitted to without any participation or opportunity for a defence by the present plaintiffs, is inoperative as to them. The company could not maintain an action against them as sureties, for a breach of the bond, because its submission to the lien and its payment thereon were both voluntary. The essential condition of a common liability on the bond in the present plaintiffs and defendants, being absent, the plaintiffs' payment gave them no right to demand contribution.

We think it is the law in Missouri, that an ordinary mechanic's lien can not be enforced against the property of a railway company, held and used for the purposes of its incorporation; and, therefore, that the plaintiffs

can not maintain their present action. *Dunn v. N. M. R. Co.* (24 Mo. 493) determines, in effect, that a public railway in this state is "established by public authority, intended for the public use and benefit, the use of which is secured to the whole community; and an injury to it is a public injury; and the public benefit is the ultimate end and purpose of all the powers and privileges" conferred upon it. The language refers particularly to the North Missouri railroad, which had received pecuniary aid from the state; but is sufficiently comprehensive for application to all railways operated under a corporate organization. It is held that a mechanic's lien may not be enforced for work done upon a bridge or culvert·in the line of the road. It was afterwards supposed that the decision would not apply to a depot or station building, since the sale or removal of that would not stop the running of trains. But in *Schulenburg v. M. C. & N. W. R. R. Co.* (67 Mo. 442), the same ruling was applied to lumber furnished for a freight depot. The *Dunn* case was interpreted as declaring it to be "against the policy of the state, to allow detached portions of a railroad to be sold under an execution or judgment enforcing a mechanic's lien." An additional ground is noted in the opinion, as conclusive that "this land was not subject to a lien." The railway corporation law empowers every such corporation to "take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance, and accommodation of its railroads; but the real estate received by voluntary grant shall be held and used for the purposes of such grant only." Rev. Stat., sect. 765. It is manifest that a sale under a mechanic's lien, and the tenure of a purchaser thereat, would be foreign to the purposes of such a voluntary grant to a railway corporation as the law allows. The record in this case does not inform us whether the lot in question was acquired by voluntary grant or by condemnation. But that makes no difference, since the tenure by condemnation is subject to the same sort of limitation. All the statutory provisions in this con-

nection are cumulative to the general effect, that a corporation may hold only "such real and personal estate as the purposes of the corporation shall require." Rev. Stat., sect. 706.

We are referred by learned counsel for the plaintiffs to a number of cases in other states which hold to a contrary doctrine. But those authorities do not furnish us with Missouri law. *Hill v. La Crosse R. R.* (11 Wis. 214), strongly illustrates this fact. Our case of *Dunn v. N. M. R. R.*, is there explained as being in accord with the constitutional policy of Missouri, which "forever encourages internal improvements." "But," it is added, "our constitution expressly forbids the state to be any party to carrying on such improvements, but leaves them to private enterprise, with such aid as may be obtained from the localities through which they pass."

With the concurrence of Judge Thompson, Judge Rombauer not sitting, the judgment of the circuit court is affirmed.