BETHUNE et al. v. CLEVELAND, ST. LOUIS AND KANSAS CITY RAILWAY COMPANY et al., Plaintiffs in Error.

Division One, May 23, 1899.

1. **Railroad**: LIEN OF LABORERS AND MATERIALMEN: UNIT: RIGHT OF WAY.   Under the statute giving all persons who shall do work in constructing or improving the roadbed, etc., of any railroad operated, owned or incorporated within this State, and all persons who shall furnish ties, fuel, bridges or material to such railroad, a lien upon the roadbed, station houses, depots, bridges, rolling stock, real estate and improvements of such railroad for the work done or material furnished, etc., the *thing* upon which the lien is given is a *unit*, and is made up of a roadbed, station houses, depots, bridges, rolling stock, real estate and improvements located within the limits of the State and denominated a railroad, whatever the stage of its construction, the length of its route, or the number of counties through which it is located, and includes the right of way, but does not include the company's franchise.

2. ——: ——: NECESSARY PARTIES.   The contractor who incurs the liability for the work done and materials furnished is not a necessary party .defendant to such action, the lien being purely *in re*.   But the railroad company is a necessary defendant.

3. ——: ——: JUDGMENT. But the railroad company in such action is not liable to a personal judgment unless it could be sued thereon in an ordinary action at law.

4. ——: ——: ——: DESCRIPTION OF PROPERTY. The property against which the lien is made to apply in such action is sufficiently described if described by the name of the railroad.

5. ——: ——: ——: WHAT IT SHOULD INCLUDE. The judgment, execution, levy and sale, in such case, should be confined to the visible, tangible, physical property of the company; that is, the railroad and whatever rights inhere in the property, and with the sale also goes whatever burdens are imposed by law on the property.

6. ——: ——: EXECUTION: SELLING ROAD IN SEVERAL COUNTIES. Under said statute the sheriff of the county where the judgment is rendered has the authority, in making the sale under the special *fieri facias*, to sell the railroad as a whole, although it lies in and is located through several counties.

*Error to St. Charles Circuit Court.*—HON. W. W. EDWARDS, Judge.

AFFIRMED.

JOHN H. OVERALL and HOUGH & HOUGH for plaintiff in error.

(1) When property that may be sold under execution is blended with what can not be sold so that it is difficult to separate them the court will quash the whole proceedings. Ammant v. Turnpike Co., 13 Serg. & R. 210. (2) The mortgage to the Farmers Loan and Trust Co., covering the franchises and all property of the original road; the mortgage to the Central Trust Co., covering all property of the defendant road except its bridges and terminals; the mortgage of the Holland Trust Co., covering the bridges of the defendant road and its terminals in Alton, St. Louis and Kansas City, and the first two mortgages covering real estate in various counties, plaintiffs' judgment could only be enforced, the rights and priorities of creditors considered and protected and the property disposed of to the best

advantage,by proper proceedings in a court of chancery. Gue
v. Tide Water Canal Co., 24 How. 257; Railroad v. Colwell,
39 Pa. St. 337; Coe v. Railroad, 10 Ohio St. 372.    (3)    The
motion to recall the execution should have been sustained.
(a)  Because the real estate of the railroad company alleged
by plaintiffs in their petition as lying in various counties of
this State and upon which the court found plaintiff's lien to
be prior and paramount, should have been described in the
judgment, in the special *fieri facias* and in the return of the
sheriff.    Freeman on Judg., sec. 50; Hearne v. Erhard, 33
Tex. 60; Keith v. Hayden, 26 Minn. 212; Crosby v. Dowd,
61 Cal. 557; Hill v. Wall, 66 Cal. 130; Sepulreda v. Baugh,
74 Cal. 468.    (b)    Because the sheriff of St. Charles county
could not sell real estate lying in other counties at the court-
house door of St. Charles county during the session of the
circuit court of that county.    Benson v. Smith, 42 Me. 414;
Alford v. Montague, 26 Tex. 782; Menges v. Oyster, 4 W.
and S. 20; Traster v. Flusher, 7 W. and S. 137; Tinz v.
O'Neal, 71 Tex. 592; Finley v. Railroad, 2 Rich. (S. C.) 567;
People v. Van Eps, 4 Wend. 387; Chiles v. Hog, 6 T. B.
Mon. (Ky) 47; Holmes v. Tagler, 48 Ind. 169; sec. 3212,
R. S. 1879; sec. 6753; R. S. 1889; Bunson v. Smith, 26 Me.
414.    (c)    Because the legislature of this State having failed
to provide the requisite and necessary machinery for enforc-
ing a mechanic's lien against a railroad located in and extend-
ing through several counties, it is not in the power of the
courts to supply such omission or to remedy defects in the
law.    The only remedy is to invoke the aid of a court of
chancery.    (d) . Because a mere right of way of a railroad
can not be sold under execution, apart from the franchises
to operate a railroad, and a mechanic's lien in this State does
not cover the franchise of a railroad corporation, nor does it
cover a railroad right of way, unless there is a roadbed on
the same.    Yet in this case a lien was imposed upon a rail-
road constructed, to be constructed, and in process of con-

struction in all the counties from Jackson to St. Charles, and the same was attempted to be sold under the execution. (4) An error in a judgment, not merely formal, being matter of record and apparent on the face of the record, will be set aside even if no motion in arrest is filed. Mumma v. Staudte, 24 Mo. App. 473; Bateson v. Clark, 37 Mo. 31; Beltz v. Eichele, 62 Mo. 178; Sweet v. Paupin, 65 Mo. 70; McIntire v. McIntire, 80 Mo. 473; Hassett v. Rust, 64 Mo. 325.

H. J. CANTWELL and GEO. P. B. JACKSON for defendants in error.

(1) The second point made by the plaintiffs in error can not be considered at this time, because: (a) No exception was saved to the action of the lower court in overruling the motion to recall the execution and appoint a receiver. (b) The attention of the lower court was never called to any supposed error in that respect by a motion for a new trial. (c) No appeal was taken, and the writ of error was not sued out until after the lapse of more than three years, viz., from May 10, 1890, to August 29, 1893, and errors in or prior to the judgment can not be reviewed on a motion to quash the execution. (d) Notwithstanding the proceeding to enforce the lien is essentially equitable in its nature, the statute creating the lien so far modifies the rules and procedure in equity as to require the court to enforce its decree by a sale of the property under special execution, without the delay and expense of a receivership—leaving other incumbrancers free to protect themselves by discharging this lien. (e) If a receiver had been appointed, the court would at once have ordered him to pay these lien debts, and the defendants did not offer to provide the money for that purpose, as they should have done when asking the court to exercise its equitable discretion in their behalf. (2) The proceeding

to enforce the lien is essentially equitable in its nature. Reilly v. Hudson, 62 Mo. 387; Hamilton v. Dunn, 22 Ill. 259; Rose v. Persse, 29 Conn. 256; Goodman v. White, 26 Conn. 317; McInery v. Read, 23 Ia. 410; Rorer on Jud. Sales, sec. 188; Davis v. Alvord, 94 U. S. 545; Furnace Co. v. Withrow, 149 U. S. 579; 12 Am. and Eng. Ency. of Law, 208. That the statute has modified the strict rules of equity practice, does not change the general nature of the proceeding. (3) This being a judicial sale the court was the vendor. Rorer on Jud. Sales, secs. 1 to 28; Beauregard v. New Orleans, 18 How. 497; Grignon's Lessee v. Astor, 2 How. 338; Florentine v. Barton, 2 Wall. 210; Blossom v. Railroad, 3 Wall. 196. In such case the court may employ any suitable agency to offer the property, receive bids, and secure a purchaser, whether it be a master, a commissioner, a sheriff or a private person. Rorer on Jud. Sales, sec. 29. Or the statute may designate who shall do these things. Ibid, sec. 75. (a) In any event such agent of the court does not act upon his own discretion or his own construction of the law as to the property to be sold, nor as to the time and place of the sale, but is controlled by the specific provisions of the decree and order of the court under which he acts. It is not his act, but the court's, which passes the title, therefore the sale must be approved and confirmed by the court in some form. Henry v. McKerlie, 78 Mo. 416; William v. Berry, 8 How. 546; Rorer on Jud. Sales, secs. 1, 4, 5, 7, 16, 17, 75 and 76. (b) This approval may be in a formal order of the court, in strict compliance with the technicalities of equity practice—or it may consist in proceeding according to statutory methods—but an express and formal confirmation is not essential, and the approval may be inferred from the other acts of the court. Pattee v. Thomas, 58 Mo. 163; Jones v. Manly, 58 Mo. 559; Grayson v. Weddle, 63 Mo. 523; Agan v. Shannon, 103 Mo. 661; State ex rel. v. Hurt, 113 Mo. 90; Henry v. McKerlie, 78 Mo. 416.

(4)   The policy of this State does not permit a railroad to be sold in detached parcels.   Dunn v. Railroad, 24 Mo. 493; McPheeters v. Bridge Co., 28 Mo. 467; Schulenberg v. Railroad, 67 Mo. 442; Cranston v. Railroad, 75 Mo. 29; Knapp v. Railroad, 74 Mo. 374; Ireland v. Railroad, 79 Mo. 572. With that rule enforced by the courts, the legislature enacted the law providing for liens against railroads, to overcome the difficulties previously existing, and to authorize a sale of an entire road.   The fair intendment of this statute is that there shall be but one lien on the entire road, to be enforced by one suit and one judgment, through one sale under one special execution, to be conducted as ordinary execution sales are—which necessarily means by one sheriff, and that, naturally, the sheriff of the county where the judgment is rendered.   Railroad v. Henning, 52 Tex. 466. (5)   The description of the property was sufficient and was fully set forth in the petition, judgment, special execution, advertisement, report of sale and sheriff's deed.   McPike v. Allman, 53 Mo. 551; Adkins v. Moran, 67 Mo. 100; Brown v. Walker, 85 Mo. 262; s. c., 11 Mo. App. 226; Charles v. Patch, 87 Mo. 450; Clamorgan v. Railroad, 72 Mo. 139; Means v. LaVergne, 50 Mo. 343; Ells v. Railroad, 40 Mo. App. 165; Railroad v. Baler, 90 Tenn. 518; Railroad v. Maffitt, 94 Mo. 56.   (6)   This effort to review the action of the lower court is too late.   Merrick v. Merrick, 5 Mo. App. 123; Horstmeyer v. Connors, 51 Mo. App. 394; Seaman v. Paddock, 51 Mo. App. 465; Kansas City v. Pryor, 58 Mo. App. 299; Boyd v. Ellis, 107 Mo. 400; Gray v. Bowles, 74 Mo. 419; Judge v. Judge, 38 Mo. 159.

BRACE, P. J.—This case was brought here by writ of error, sued out by the Farmers Loan and Trust Company of New York, one of the defendants, on the twenty-ninth day of August, 1893, whose counsel state the case, as follows:

"The defendant, the Cleveland, St. Louis and Kansas City Railway Company, was incorporated under the laws of

the State of Missouri, on March 26th, 1888, for the purpose of building a railroad from a point on the bank of the Mississippi river in St. Charles county, opposite the city of Alton, in the State of Illinois, through the counties of St. Charles and St. Louis to the city of St. Louis, and of securing such lines of railroad as would constitute a line over which it might do business through the various counties of Missouri, between its terminus in St. Charles county to the city of Kansas City in Jackson county, Missouri.

"On June 1st, 1887, the Central Missouri Railroad Company, a corporation organized under the laws of Missouri for the purpose of constructing a railroad from a point opposite the city of Alton in the State of Illinois, through various counties in the State of Missouri, to the city of Kansas City, in Jackson county, Missouri, conveyed all its property and franchises then owned or thereafter to be acquired, to the Farmers Loan and Trust Company, to secure its eight hundred thousand dollars of bonds.

"On March 28th, 1888, the Cleveland, St. Louis and Kansas City Railway Company purchased of the Central Missouri Railway Company, all that portion of the railway of the last named company constructed and to be constructed, beginning at Kansas City and running eastwardly through various counties in the State of Missouri to the city of Alton, Illinois, together with all the real estate and other property of the Central Missouri, consisting or connected with any part of said portion of its railroad in the various counties of Missouri through which the route of its railroad ran.

"Of the bonds secured by the deed of trust of the Central Missouri Railway Company to the Farmers Loan and Trust Company, only two hundred and fifty were ever issued.

"On July 30th, 1889, plaintiffs brought suit in St. Charles county against the defendant, the Cleveland, St.

VOL. 149 mo—38

Louis and Kansas City Railway Company, for work and labor performed and materials furnished in construction of part of the defendant's railroad in St. Charles county, under a contract with William Baird and Company, original contractors, and sought to establish a paramount lien therefor against the roadbed, bridges, culverts, station houses, depots, real estate, rolling stock and improvements of the company, from a point on the Mississippi river opposite Alton, to Kansas City, under article IV, chapter 47, of the Revised Statutes of 1879, now article IV, chapter 102, of the Revised Statutes of 1889. The Farmers Loan and Trust Co., mortgagee of the Cleveland, St. Louis and Kansas City Railway Co., the Central Trust Company, junior mortgagee of the defendant railroad, and the Holland Trust Company, mortgagee of its bridges, were made defendants, but the original contractors were not made parties.

"It is alleged in plaintiffs' petition that that part of the railroad between the city of St. Charles and the town of Hamburg, both in St. Charles county, a distance of about twenty miles, is completed, and trains running thereon; that the railroad is graded east from St. Charles to a point on the west bank of the Mississippi river opposite Alton; that the railroad is graded from Hamburg, to a point in Warren county about thirty miles west of Hamburg; that the projected line extends and is intended to be constructed, through Warren and the various counties west thereof to Kansas City; that the company is the owner of a projected railroad from the point opposite Alton to the city of St. Louis, and that the said company is the owner of real estate and improvements in said counties through which said projected lines are to run.

"On March 22d, 1890, upon a trial of the cause, a jury being waived, the court assessed damages, in behalf of plaintiffs for the sum of eighty-eight thousand five hundred and thirty-five dollars and seventy-six cents, and further found

the same to be a first and paramount lien upon the property mentioned in the petition, and ordered, adjudged and decreed that the plaintiffs' lien therefor be enforced and that the damages aforesaid, together with the costs of suit, be levied out of the property mentioned in the petition, and on March 28th, 1890, execution was issued upon said judgment directing the sheriff of St. Charles county to seize, levy upon and expose to sale, at the courthouse door in St. Charles, Missouri, during the session of the circuit court of St. Charles county, Missouri, on Saturday, May 10th, 1890, the road-bed, depots, bridges, station houses, rolling stock, real estate and improvements of the defendant railway company, within the State of Missouri, including that acquired from the Central Missouri Railway Company, and to have the same before said court on the first Monday of September, 1890, to render to said plaintiffs their damages, interest and costs and certify how said writ was executed.

"On May 8th, 1890, this defendant and others filed their application and motion as creditors of the defendant railway company to recall the execution and for the appointment of a receiver. This application and motion was, on May 10th, 1890, denied and overruled by the court.

"The return of the sheriff shows that he levied upon the property described in the execution and sold the same at the courthouse door in the city of St. Charles, Missouri, during the session of the circuit court of St. Charles county, to James H. Bethune for $142,700.

"On the day of the return, the defendant, the Farmers Loan and Trust Company, filed its motion amended September 6, 1890, to set aside the sale and to quash the execution, the levy thereunder and the return thereof, on the grounds that the real estate and other property seized under the execution lies in the counties of St. Charles, St. Louis, Warren, Montgomery, Callaway, Boone, Howard, Cooper, Saline, LaFayette, Johnson and Jackson, and that the sheriff

of St. Charles county has no warrant or authority in law to sell real estate and other property, lying, situate and being in other counties of the State of Missouri than the county of St. Charles, nor had he authority or warrant of law to levy upon the same.

"This motion the court overruled, and the motion of defendant, The Farmers Loan and Trust Company, to set aside the judgment and order of the court overruling the motion to set aside the sale and quash the levy and return, and to grant this defendant a rehearing having been overruled, this defendant brought the case here by writ of error."

While this statement is substantially correct and satisfactory as far as it goes, it may be well to supplement it as follows:  The decree of March 22, 1890, omitting the finding is as follows:

"It is therefore considered, ordered, adjudged and decreed by the court that the plaintiffs' lien be enforced, and that the plaintiffs have and recover the sum of eighty-eight thousand five hundred and thirty-five and seventy-six one-hundredths dollars ($88,535.76), being the damages heretofore assessed, together with interest from this date at the rate of six per cent per annum, and the costs of this suit, same to be levied out of the property heretofore charged with a lien and now adjudged and decreed to be a first and paramount lien upon said property, which said property is described as follows, to wit:  The roadbed, depots, bridges, station houses, rolling stock, real estate and improvements of the Cleveland, St. Louis and Kansas City Railway Company, within the State of Missouri, including therein all of the roadbed, bridges, depots, station houses, rolling stock, real estate and improvements on that portion of the road acquired by the Cleveland, St. Louis and Kansas City Railway Company of the Central Missouri Railway Company under the contract of sale executed by and between said companies

on March 28th, 1888, and filed in the office of the Secretary of State of the State of Missouri on March 31, 1888, which said railroad as constructed and in process of construction and to be constructed begins at Kansas City, Missouri, and runs eastward, crossing the Missouri river at Arrow Rock, to a point in the county of St. Charles, Mo., opposite Alton, Illinois, and to the city of St. Louis, Mo., passing through the counties of Jackson, Johnson, LaFayette, Saline, Cooper, Howard, Boone, Callaway, Montgomery, Warren and St. Charles, and also through the county of St. Louis and city of St. Louis, Mo. It is further ordered that a special execution. issue upon this judgment and in conformity therewith."

Afterwards on the twenty-seventh of March, 1890, execution thereon was ordered as follows:

"On motion of plaintiffs, it is ordered by the court that the sheriff of St. Charles county, Missouri, proceed to seize and levy upon and advertise said property in said decree and hereinafter described, for sale, and that he expose the same for sale for the satisfaction of said lien on the 10th day of May, 1890, during the session of the circuit court of St. Charles county, Missouri, at the courthouse door in St. Charles, Missouri."

The mandate of the execution, following a recital of the judgment, is as follows: "These are therefore to command you, that of the property in said decree and hereinafter described and charged with a lien by said decree of judgment, as follows, to wit: the roadbed, depots, bridges, station houses, rolling stock, real estate and improvements of the Cleveland, St. Louis and Kansas City Railway Company within the State of Missouri, including therein all of the roadbed, bridges, depots, station houses, rolling stock, real estate and improvements on that portion of the road acquired by the Cleveland, St. Louis and Kansas City Railway Company of the Central Missouri Railway Company under the contract of sale executed by and between said companies

on March 28th, 1888, and filed in the office of the Secretary of State of the State of Missouri on March 31, 1888, which said railroad as constructed, to be constructed and in process of construction, begins at Kansas City, Missouri, and runs eastward, crossing the Missouri river at or near Arrow Rock, Mo., to a point in the county of St. Charles, Missouri, opposite Alton, Illinois, and to the city of St. Louis, Missouri, passing through the counties of Jackson, Johnson, LaFayette, Saline, Cooper, Howard, Boone, Callaway, Montgomery, Warren and St. Charles, and also through the county of St. Louis and city of St. Louis, Missouri, and that you cause to be made the damages, interest and costs aforesaid, by seizing and levying upon said property and exposing the same for sale, at the courthouse door, in St. Charles, Missouri, and during the session of the circuit court of St. Charles county, Missouri, on Saturday, May 10th, 1890, and that you have the same before our said court, on the first Monday in September, 1890, to render to said plaintiffs the said damages, interest and costs, and that you certify to our said court how you execute this writ. Hereof fail not, and have you then and there this writ."

The return of the sheriff shows that the sale was made in conformity with the execution, and that twenty days' notice had been previously given of the time, place of sale, and of the property to be sold by advertisement in a newspaper printed in each of the counties of St. Charles, Jackson, Johnson, LaFayette, Saline, Cooper, Howard, Boone, Callaway, Montgomery, Warren and St. Louis, and in one printed in the city of St. Louis. It also appears from the record that on the 12th day of June, 1890, John F. Schneider, sheriff of St. Charles county, acknowledged the execution of a deed by him to James H. Bethune to the Cleveland, St. Louis and Kansas City railway and appurtenances, and that on the same day a motion for a rule on the sheriff to pay out of the proceeds of the sale certain lien

judgments rendered in the United States Circuit Court for the Eastern Division of the Eastern Judicial District of Missouri, was overruled.

(1) The act giving a lien on railroads to contractors, materialmen and laborers, for work done and materials furnished in the construction thereof, was first enacted March 21st, 1873 [Sess. Acts 1873, p. 58], and since has continued in force through the Revisions of 1879 and 1889 without material change. [R. S. 1879, Chap. 47, Art. IV, R. S. 1889, Chap. 102, Art. IV.] The original title of the act was "An Act to protect contractors, subcontractors and laborers in their claims against railroad companies or corporations, contractors or subcontractors."

Prior to its passage the only special protection that any of these parties had by law, was a statute giving to a laborer a right of action against a railroad company for thirty days' wages due from the contractor [G. S. 1865, Chap. 63, Sec. 10], and the general mechanic's lien law. The right given by the former extended only to ordinary day laborers [Groves v. Railroad, 57 Mo. 304; Mooney v. Railroad, 28 Mo. 570], and the right given by the latter was a lien only on the building, erection or improvements on or for which the work was done, or the materials furnished, and upon the land on which the same was situated to the extent of one acre, or to the extent of a lot, if in a town, city, or village. [G. S. 1865, Chap. 195.] As the enforcement of such a lien against a railroad, by execution and sale of such part thereof as was in terms subject to the lien, would have the effect of disintegrating the property and thereby destroying its usefulness as a public highway, it had been held on grounds of public policy, that no lien could be enforced under that law for work done, or materials furnished for the construction of a railroad. [Dunn v. Railroad, 24 Mo. 493; McPheeters v. Merimec Bridge Co., 28 Mo. 465; Schulenberg v. Railroad, 67 Mo. 442.] It had also been

held that the franchise of a corporation could not be sold under a general execution upon a personal judgment. [Stewart v. Jones, 40 Mo. 141.]

It was in view of this condition of the law on the subject that the statute under consideration was enacted, providing that "All persons who shall do any work or labor in constructing or improving the roadbed, rolling stock, station houses, depots, bridges or culverts of any railroad company, incorporated under the laws of this State, or owning or operating a railroad within this State, and all persons who shall furnish ties, fuel, bridges or material to such railroad company, shall have for the work done and labor performed, and for the materials furnished, a lien upon the roadbed, station houses, depots, bridges, rolling stock, real estate and improvements of such railroad upon complying with the provisions hereinafter mentioned." The lien given was made paramount to all mortgages or incumbrances placed upon the property subsequent to the passage of the act. In order to secure it, persons claiming the benefit thereof, were required within ninety days after the completion of the work or after the materials were furnished, to file "in the office of the circuit clerk of any county through which said railroad is located" a just and true account thereof, with the name of the contractor, and "of the railroad against which said lien was intended to apply," and within the same time serve a copy of such account upon the company, and the clerk was thereupon required to indorse upon every such account·the date of its filing, and make an abstract thereof in a book by him kept for that purpose. It was then made the duty "of circuit clerks in whose office such accounts and liens may be filed, within five days thereafter, to forward to the Secretary of State a true copy of said accounts and liens and judgments rendered thereon by the circuit courts in which the case has been tried," and of the Secretary of State "to file in his office such accounts and liens when

received, and to prepare and keep in his office a book in which shall be entered an abstract of all accounts and liens filed as aforesaid, which abstract shall be so arranged and indexed as to show, in a convenient form, the names of all parties claiming liens, the amount claimed by each, the railroad to which the same applies, the date of filing, and if discharged, when the same was done."

In order to enforce this lien the law requires that action thereon shall be commenced within ninety days; "that the person or corporation owning or operating the railroad to which said liens may apply shall, in each instance, be made a party defendant," and that the contractor for whom the work was done or the materials furnished need not be made a party defendant, but may be so made at the option of the lienor. It then provides that such actions shall be prosecuted to final judgment as in ordinary civil actions, but that "no personal judgment shall be rendered thereon except as against such defendants as might be sued thereon in an ordinary action at law." That the judgment "if for the plaintiff shall be that he recover the amount of the indebtedness found to be due and costs of suit, to be levied out of the property charged with the lien therefor." That the execution "shall be a special *fieri facias*" in conformity with the judgment, returnable "as in ordinary executions, and the advertisement, sale and conveyance of real estate under the same shall be made as under ordinary executions," and that "in all cases where judgments have been rendered and a sale has been ordered, and the property sold to which said liens attach, the proceeds arising from such sale, if not sufficient to discharge all the liens on which judgments have been rendered before such sale shall be made, shall be isdbtriuted *pro rata* upon such judgments as if the filing of said liens had been all of the same date; and when such judgments have been by such sales or otherwise wholly or partially paid and satisfied, the clerks shall enter

upon the records the amount or amounts so paid, with a correct description of the real property sold, and within the time and in like manner certify the same to the Secretary of State, as heretofore provided."

The record brought here by the writ of error in this case, shows a substantial compliance with all the requirements of the statute of which the foregoing is a summary. The sufficiency of the pleadings and the evidence was not questioned in the court below. No exceptions were taken to any action or ruling of the court on the trial. No motion for a new trial or in arrest of judgment was afterwards made, and no exception was taken to the action of the court in overruling the motion to recall the execution and appoint a receiver on the 10th of May, 1890, and more than three years had elapsed after all these proceedings were had, before the writ of error was sued out. So that, the only thing before us for review herein, is the action of the court on the 13th of September, 1890, overruling the motion to set aside the sale and quash the execution and levy, under which it was made, to which ruling exception was duly taken and saved. While the only ground predicated in the motion for its support was that the sheriff of St. Charles county had no warrant or authority of law to levy upon or sell the property not wholly situate in that county, it is now here urged that the motion ought to have been sustained, not only for that, but for the following additional reasons, viz.: Because there was no personal judgment against the railway company, the property was not sufficiently described in the judgment, and the judgment included property not subject to the lien, i. e., the right of way and the franchise of the company.

(2)   Without stopping to consider the question whether the plaintiff in error is in a position to urge any ground in support of its motion other than that therein assigned, it seems to us that in a proper consideration of the text of the statute, its nature and purposes will be found a ready answer

to all these objections and a vindication of the action of the trial court in overruling the motion. In fact the attack made by counsel for the plaintiff in error, in the main, is rather upon the law itself, than upon this proceeding under the law, and in making it, they seem to lose sight of the fact that the single purpose of its enactment was to protect the persons whose labor and material had been expended in constructing a certain thing, by giving them a paramount lien on that thing and a simple and speedy process for its enforcement by action against that thing. To this action incumbrancers are not necessary parties, and their protection is not within the scope and purpose of the act. By discharging the lien they can always bring themselves within the ample folds of a court of equity, and secure such protection as they may be entitled to, but no place is made for them in this proceeding, and until this paramount lien is discharged by them, they are in no position to invoke the aid of a court of equity.

In contemplation of this statute the thing upon which the lien is given is a unit, made up of "a roadbed, station houses, depots, bridges, rolling stock, real estate and improvements," *in situ*, located within the limits of the State and denominated a railroad, whatever the stage of its construction, the length of its route, or the number of counties through which it is located. This is apparent upon the face of the statute, and has in effect been so held by this court. [Knapp v. Railroad, 74 Mo. 374; St. Louis Bridge & Construction Co. v. Railroad, 72 Mo. 664; Cranston v. Union Trust Co., 75 Mo. 29; Ireland v. Railroad, 79 Mo. 572.] As the right of way is one of the inherent and necessary constituents of a railroad, and within the terms of the statutory description of those constituents, the lien included the right of way, and that objection is answered.

(3) The action given for the enforcement of the lien is so purely *nire* that the contractor who incurs the liability

for the work done and materials furnished is not a necessary party defendant to the action, and while the railroad company is a necessary defendant to the suit, it is not liable to a personal judgment therein, unless it could "be sued thereon in an ordinary action at law." And as the defendant in this instance could not be so sued, the objection to the form of the judgment is answered.

(4) The statute requires that the particular property to which the lien is to apply is to be described by the name of the railroad. This is the property against which judgment is to be rendered, and execution is to issue, and a description of it therein by that name is sufficient, and this is a sufficient answer to the objection on that score.

(5) This statute does not undertake to give a lien upon the company's franchise, and in this case no attempt was made to charge the lien upon the franchise. It was neither levied upon nor sold. The judgment, execution, levy and sale was confined to the visible, physical, tangible property of the company, made subject to the lien by the statute, i. e. its railroad, nothing more and nothing less. Whatever rights inhered in that property and those only, went with the sale, and with them went also whatever burdens were imposed upon the property by law. The determination and adjustment of those rights and burdens were not contemplated or provided for in the proceeding under this statute; and for the protection of any right the plaintiff in error may have by reason of its relation to the company, its franchise, or its tangible property, a remedy for its protection and enforcement must be sought in some proceeding outside of this statute. The fact that the legislature did not provide for a lien and its enforcement against the franchise of the company, affords no ground for a refusal to enforce the lien against the tangible property on which it did impose a lien, and for the enforcement of which, against that property, it did provide. That the legislature

had power to subject the franchise as well as the tangible property to the lien is beyond question, but as it saw proper to impose the lien upon the latter only—against it only, must the lien be enforced, and the consequential rights flowing therefrom must be declared in some proceeding other than this, in which the discussion of those rights has no place.

(6)   The only remaining ground for quashing the execution and setting aside the sale, is that originally assigned in the motion in the lower court, which in substance is that the sheriff of St. Charles county had no authority to sell the railroad as a whole, because a part of it was not within the limits of that county.   This contention is based upon that provision of the act which requires that the "writ shall be returnable as in ordinary executions, and the advertisement, sale and conveyance of real estate under the same shall be made as under ordinary execution."   R. S. 1889, sec. 6753, and the general provision referred to which is as follows: "When real estate shall be taken in execution by any officer, it shall be his duty to expose the same to sale at the courthouse door, on some day during the term of the circuit court of the county where the same is situated, having previously given twenty days' notice of the time and place of sale, and what real estate is to be sold and where situated, by advertisement in some newspaper printed in the county."   [R. S. 1889, sec. 4941.]

This contention is no more tenable than the others. The sheriff in making sale under the special *fieri facias* authorized by this act derives his authority from and executes the power given to the circuit court by the act, and not by virtue of his power as sheriff under the general law.   The power is given by the former, the manner of its exercise is governed by the latter, and should be conformed to as nearly as possible, as was done in this case, but it does not follow because the mode prescribed can not be literally followed, in every particular, that the power is paralyzed and the

whole purpose of the law defeated. Under such circumstances the letter of the law must give way to its spirit and intention, the method must be subordinated to the purpose, and the situation is relieved by the application of the familiar rules that "where a general act is incorporated into a special one, the provisions of the latter will prevail over any of the former" and that "an act adopting another act by reference does not adopt it beyond the purposes of the new act." [Endlich on Int. Stat., secs. 233 and 101.]

The circuit court committed no error in overruling the motion to set aside the sale and quash the execution, and its action in so doing is affirmed.    All concur.