[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 142 
Neither the act of 1787, regulating the buildings, streets, wharves and slips in the city of New-York, or that of 1801, with the same title, conferred the power to take lands for the purpose of altering streets; and the authority granted was consequently limited to those cases which did not require the exercise of the right of eminent domain. The assessments made by virtue of those statutes for sums expended for streets, c., were to be imposed by commissioners, subject to the approval of the common council by whom they were appointed, and might "be sued for and recovered, in like manner as if the houses and lots assessed were mortgaged for the payment." By the act of 1812, § 1, the authority to take lands for the purpose of enlarging, straightening, altering or otherwise improving the streets of the city was granted to the common council; the commissioners of assessment to be appointed and their proceedings to be supervised and approved by the supreme court. The laws above mentioned were in force in 1813, when "the act to reduce the several laws relating particularly to the city of New-York into one act" was enacted. (2 R.L., 342, 433.) The provisions of the acts of 1787 and 1801, so far as they relate to streets unconnected with wharves, were embodied in the law of 1813, under the head "of paving and regulating streets, c;" and the provisions of the act of 1812, upon the same subject, under the head "of opening and laying out streets, c." The remedies given by the act of 1813, for the collection of the assessments for "paving, and regulating, and the opening of streets," by those sections found under those captions respectively, are: First, that the assessment is declared a lien upon the lots benefited. Second, it may be enforced by distress and sale of the goods of the owners and occupants, who are made liable for its payment; and in case of opening streets, an action of debt or assumpsit could be maintained for its recovery. (§§ 175, 186.)
With this general reference to the law of 1813, and to *Page 144 
some of the statutes existing at the time of its passage, we proceed to the consideration of the 223d section of that act, upon the construction of which depends the whole question in controversy. This section is found under the caption "of wharves, piers and slips." (2 R.L., p. 431.) By section 219, under the same heading, the common council are authorized to take lands for wharves and slips, and to assess the damages by a jury to be summoned for that purpose; by section 221, they have power to lay out streets and wharves, according to the plan previously sanctioned, along the East and Hudson rivers, which are to be made by the proprietors of lands nearest and opposite to said streets or wharves, and, in case of their neglect or refusal, by the corporation of the city, who may levy the sums expended (if not paid) with interest and costs by distress and sale of the goods of the proprietors, or recover the same by action of debt. Then follows section 223, which provides, "that the said sums so to be expended, and every sum which hath heretofore been assessed among the owners and occupants of any houses or lots in said city, by virtue of the act for regulating the buildings, streets, wharves and slips in the city of New-York, passed April 16, 1787, or by virtue of the act with the same title, passed April 3, 1801, and not refunded, or shall hereafter be assessed by virtue of this act, shall be a lien or charge upon the houses and lots in respect to which such assessments shall have been made, and shall be on interest until paid; and shall be entitled to a preference before all other incumbrances on the same; and may be sued for and recovered with costs, in like manner as if said houses and lots were mortgaged to the corporation for the payment thereof." The first clause of the section, "that the said sums so to be expended," obviously refers to the expenses which might be incurred by virtue of the sections immediately preceding, and which embrace wharves, piers, slips and the streets connected with them to be constructed, or *Page 145 
extended upon the Hudson and East rivers. The second clause relates to a new subject, and includes "every sum" theretofore assessed by virtue of the acts of 1787 and 1801. The third clause, "or shall hereafter be assessed by virtue of this act," comprehends in terms, and we think according to its import, all assessments authorized by the law of 1813 for similar objects. These objects, as will be seen by reference to previous acts, were wharves, piers, slips and the streets of the city; all of which were subjects of legislation, embraced in the statutes of 1787 and 1801. It is true that the act of 1812 conferred a new power, which was continued by the law of 1813, under the head "of opening and laying out streets;" but one purpose of the grant was to enable the corporation to effect the alterations authorized by previous statutes, by appropriating the lands necessary to effect that object. These various laws in reference to a common subject were in pari materia; and as the expenses incurred under each of them for the particular improvement were to be assessed and made a lien upon the real estate of the owners benefited, there was no reason, when they were consolidated, why the remedies for the collection of the sums thus assessed should not be uniform; and that the charge by way of mortgage, given to secure the disbursements for the alteration of a street under the acts of '87 and 1801, should not, in the law of 1813, be extended to assessments for lands necessarily appropriated to accomplish the same purpose. It is said that the heading is a legislative declaration of the subject to which the sections that immediately follow must be considered to relate. The answer to this suggestion has been anticipated. The second clause of the 223d section, in terms as distinct as our language affords, refers to "every sum which had been assessed by virtue of the acts of 1787 and 1801." The laws last mentioned embraced not only wharves, piers, slips and the streets formed by them, subjects to which the preceding caption refers, but also the paving, altering and *Page 146 
amending streets, particulars included in the act of 1813, under a distinct heading. And yet provision for past assessments, for all these various purposes indiscriminately, is made in the second clause; while prospective assessments, on account of the subjects included under the particular caption, are specifically provided for in the first clause of the same section. If, therefore, the hypothesis under consideration is correct, since all assessments, past and future, for purposes mentioned in the heading, are provided for in the first and second clauses, it follows that the language of the third clause, including "all sums hereafter to be assessed by virtue of this act," would be mere surplusage.
It may be conceded that regard should be had to the headings in this act, which were adopted as a matter of convenience in the compilation. But they can claim no more respect than we are accustomed to yield to the formal title of a statute. Now, it is notorious that the discrepancy between the headings and subjects of our laws was so frequent, that a constitutional provision was deemed necessary to guard against imposition upon a class of legislators whose knowledge of bills was supposed to be gathered principally from the title. Again, it was not the design of the legislature that the provisions under the respective captions should each form a complete system. For example, the authority to sell lands for assessments, which the appellant insists was the appropriate remedy in this case, is not found under the head "of paving and regulating streets," or that of opening and laying them out, but in section 459, under a distinct caption. In a word, the act of 1813, though compiled from a large number of statutes relative to the city of New-York, was intended to supersede them, and to form a system of regulations capable of being interpreted and administered in most instances without reference to previous enactments. In effecting this object, it was natural that subjects between which there was only a specific difference should be grouped under appropriate *Page 147 
headings, while provisions which, in the existing laws appertained to a particular species, should, in the revision and compilation, be made applicable to a class embracing them all, for the purpose of securing uniformity. This I think has been done; and we are to construe the 223d section of the act of 1813, in reference to the case before us, as though the laws of 1787 and 1801 as to the regulation and alteration of streets, and that of 1812 in reference to their opening and alteration, had been included in a single statute. If in the case supposed the legislature had declared in the language of that section, "that all sums that shall hereafter be assessed by virtue of this act" shall be a lien and incumbrance, in like manner as if the houses and lots had been mortgaged to the corporation," no doubt would be entertained that all assessments for the alteration of a street, whatever the mode in which they were effected, would be included. The superior court was, therefore, correct in adjudging that the corporation had a right to this remedy.
2d There is no force in the suggestion, that by the sale of the assessed premises, and the payment of the money by the purchaser, the debt was satisfied. The sale was one step in a series of proceedings, all of which were necessary to divest the appellant of the absolute ownership and control of his property, and to furnish the only consideration for which the purchaser advanced his money. In consequence of a misapprehension of the law, those proceedings were defective in an essential particular, and the sale, in consequence, became utterly void. The owner lost nothing, the purchaser gained nothing, and the corporation received nothing which they could legally retain. Such a result is anything but a satisfaction of a preëxisting debt. If the corporation have lost their claim, it is a forfeiture incurred for misconstruing the law. But I do not understand that this penalty is inflicted in any case of a judicial or quasi
judicial sale, where the creditor has acted *Page 148 
in good faith, and the debtor has sustained no injury. (People
v. Hopson, 1 Denio, 574; Peck v. Tiffany, 2 Comst.,
451.)
And finally, if the lien continued, and it has not as I think been discharged, it was in the nature of a judgment. The assessment and its confirmation were judicial acts, and the statute makes the sum thus found a lien upon the premises assessed, when the report is filed. The analogy is certainly strong between the two; and as the legislature have not fixed the time when this incumbrance shall cease to bind the lands charged, it will work no injustice to the appellant, who has continued to be and is now the owner of the premises, to apply the limitation prescribed by the law to judgments to this lien also. The judgment of the superior court must be affirmed.