(4 App. Div. 15.)

### FINEGAN v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    April 10, 1896.)

1. TAXATION—RECOVERY BACK OF TAXES PAID.
     A landowner by mandamus compelled the clerk of arrears to receive payment of the arrears of taxes and water rents for which the land had been sold, and to cancel such sales, on the ground that the tax sales were void.    The taxes were valid, and the writ recited that they were liens on the property.    *Held* that, on payment of such arrears of taxes by the landowner, neither he nor his assignee could maintain an action against the city to recover back the money so paid.

2. SUBROGATION.
     A purchaser at void tax sales, who is a mere volunteer, and who pays his money on the bids, and receives certificates, does not thereby become entitled to be subrogated to the right to receive the taxes from the owner of the premises.

Appeal from trial term, New York county.

Action by Austin Finegan against the mayor, aldermen, and commonalty of the city of New York, to recover a sum of money paid by the owner of certain real estate to extinguish the lien of taxes on it. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

John Townshend, for appellant.
George L. Sterling, for respondent.

RUMSEY, J. The action was brought to recover a sum of money which had been paid by the owner of certain premises to extinguish the lien of taxes upon them. The facts are that, taxes and Croton water rents upon the premises having been unpaid for several years, the clerk of arrears, in 1866, put the property up for sale for the arrears of taxes, and upon such sale one John L. Brower offered to take such premises for a term of 1,000 years. The first sale was made in January, 1866, and the premises were struck off to Brower, and he paid $38.91. The second sale was made in November, 1866, and Brower again bought a like term in the premises, and paid $61.10 for it. The lot was again sold for subsequent taxes on the 6th of December, 1871, and a term of 1,000 years was sold to Peterkin, and he paid $132.89. The certificates were duly issued by the clerk of arrears, and they were subsequently sold to John Townshend, who bought the last of them in October, 1881. Subsequently, and on the 12th of April, 1882, Townshend sold and conveyed the property to Bernard Finegan, and at the same time delivered the leases to him. In April, 1893, Bernard Finegan, then being the owner of the fee, sued out a writ of mandamus requiring the clerk of arrears to receive the payment of the arrears of taxes and water rents upon which it had been attempted to sell these premises many years before, as stated above. The writ recited the fact that the tax sales were void, and required the clerk, upon receiving the amount of taxes and interest, to mark the taxes and rents as paid, and cancel the records in his office of the three several sales of the said lot for the nonpayment of said taxes and water rents. This money was paid in April, 1893, pursuant to the writ of mandamus, and the amount so paid was $534.26. Some time in March, 1893, Bernard Finegan assigned his interest in the leases to the plaintiff, and thereupon, after the money had been paid by him, the plaintiff brought this action to recover the money from the city. The foregoing facts, with some others, were found by the judge who tried the case. As the result of the trial, the complaint was dismissed, and from the judgment dismissing the complaint this appeal is taken.

It is claimed, on the part of the plaintiff, that these tax sales were void, and this, he says, is the theory upon which his action is brought. While there is no finding on that subject by the court, yet it was clearly shown by the writ of mandamus, which was put in evidence by the plaintiff as the foundation of the right of Bernard Finegan to pay these taxes, and that fact may fairly be considered in the

examination of this appeal, especially as the plaintiff insists upon it here, and bases his cause of action upon it. Although the writ of mandamus proceeded upon the theory that the sales were void, and the writ is accepted by the plaintiff as an adjudication upon that point, yet it is to be noticed that the writ does not adjudge that the taxes themselves were illegal; but, on the contrary, the court finds that the taxes were valid, and the writ recites that they are still liens on the lot. That being so, the lien of the taxes had not been affected by the attempt of the clerk of arrears to sell the property by reason of them. Neither was the payment of the money upon the bid a payment of the taxes by the purchaser. Clementi v. Jackson, 92 N. Y. 591. It had no effect whatever upon them, and so the writ recited. Then, in April, 1893, the taxes still remained unpaid, and the lien was not extinguished or affected. In the case of Mayor v. Colgate, 12 N. Y. 140, in which it was held that the tax sales were void in consequence of defects, the court say that the owner lost nothing, the purchaser gained nothing, and the corporation received nothing which it could legally retain. So far as the taxes were concerned, the whole transaction was a mere nullity. The purchaser, by his bid, did not attempt to pay the tax. He did not make the bid for any such purpose. He simply stood in the attitude of a man who was willing to buy what he supposed the corporation had to sell. He stood in no privity with the owner, but his position was, rather, hostile. He certainly cannot be said, when he paid the amount of his bid, to have paid anything in satisfaction of the debt which the owner owed to the city by reason of the assessments levied upon his land, and such seems to have been the opinion of the court in Mayor v. Colgate and Clementi v. Jackson, supra. The mandamus, viewing the attempt to sell as void, required the clerk of arrears to accept the arrears of taxes and of water rents for the years mentioned therein, with the interest accrued on the taxes and water rents, to the time when the payment was offered by Bernard Finegan in 1893, and that was the sum which he received by virtue of the compulsion of the writ which Bernard Finegan put upon him. The amount thus paid was not paid for the benefit of anybody else; but, as found by the court, the payment was made to pay the taxes upon the property by the person who paid what he was bound to pay to relieve his property from the lien of the taxes and water rents. This sum was clearly not paid for redemption under the provisions of the consolidation act. The amount to be paid for redemption consisted of the several sums which were paid upon the several bids, being $38.91 paid January 15, 1866, $61.10 paid November 2, 1866, and $182.39 paid December 16, 1871, with interest on each of these payments at 14 per cent. annually from the time of the payment. Consol. Act, §§ 941, 947. This sum was very much greater than the amount actually paid pursuant to the mandamus, and, as is conceded on all hands, and recited in the mandamus, it was paid upon the taxes because the sale was void. What was received, then, was the tax. If the sale was void, the tax lien still existed, as we have seen, and it was an incumbrance upon the property, which the owner was interested to remove. But the payment of the tax in

1893 gave the purchaser at the sale no right to the money then paid for that purpose. His right is only to receive from the city the money paid, under section 941, for redemption, and there is no pretense that this money was paid for that purpose. It is quite true that one of the findings of fact says that the money was paid to redeem the premises from the lien of said taxes and water rents, and from said sales therefor; but it must be remembered that the sales had been adjudged to be void, and there was no sale to redeem from. The only thing of that nature which existed was the record of the illegal sales which was in the office of the clerk of arrears, and which, unless canceled, stood as an apparent lien upon the title of the owner of the fee, and the clerk of arrears was directed to cancel them. Under the facts stated in the mandamus, it might well be said that the money was paid to relieve the land from the apparent lien of that sale, which was, in fact, void; and, interpreting the finding in that way, there is no inconsistency between the two findings of fact by the court.

But it is said that, the sales being void, the receipt of the money upon the bids by the city, and the issue of the certificates upon the sale, operated as an assignment to the purchaser of the right of the city to collect the tax, or, at least, operated to give him a right to receive the tax when it was paid to the city. In other words, the plaintiff claims that the purchaser, by paying his money upon the bid at the void sale, became subrogated to the right to receive the tax from the owner of the premises. To this proposition there are several answers. Subrogation is the substitution of another person in the place of a creditor, to whose rights he succeeds in relation to the debt. This may come about when one who is bound as a surety to pay a debt advances the amount of it to a creditor, in which case he receives everything that the creditor has to enforce the collection of the debt. It may come about, also, when one who has any interest to protect pays some lien or incumbrance upon property for the purpose of protecting that interest, in which case he will be deemed the equitable assignee of the debt which he pays. Cole v. Malcolm, 66 N. Y. 363. But no one who is a mere volunteer can acquire a right of subrogation. There must be either some duty on his part to pay, or some interest to be protected which gives him the right to pay the debt. Acer v. Hotchkiss, 97 N. Y. 395; Shinn v. Budd, 14 N. J. Eq. 234. In this case there was nothing of the kind. The purchaser at the sale was a mere volunteer, who bought an interest in the land, but paid no incumbrance. It is expressly held, in Clementi v. Jackson, supra, that the purchase at a void tax sale did not operate as a payment of the tax; and, certainly, if the tax was not paid to the city, then there was nothing to which the purchaser could be subrogated. For this reason, alone, the theory of the plaintiff fails.

The plain situation of the case is this: When an attempt is made to sell these premises upon these legal taxes, the purchaser, for his own interest, and not at the request of the owner of the premises, invested his money in what he supposed to be a good speculation. This was done without any intent to pay the debt or obligation of

the owner, but simply to become the owner himself of an interest in these premises.   He got nothing by the investment which he made. It may be that he might recover back the money which he has paid upon this void sale, although that is doubtful.   Coffin v. City of Brooklyn, 116 N. Y. 159, 22 N. E. 227; 25 Am. & Eng. Enc. Law, 719, and cases cited.   But the money which he paid was not for the benefit of the owner.   It did not relieve him from the payment of the tax, nor did it relieve the lands from the incumbrance; and, so far as the owner and the city were concerned, the situation remained precisely as it was before.   No reason can be perceived why the city should be made liable to pay back the money which was received on a valid tax, because it has previously received other money upon an illegal sale of. the taxed premises, and may possibly be liable to pay back the money so received to the person who paid it or his assignee.

The judgment must be affirmed, with costs.

VAN BRUNT, P. J., and BARRETT and PATTERSON, JJ., concur.   WILLIAMS, J., concurs in result.