HEMAN CONSTRUCTION COMPANY, Appellant,
v. WABASH RAILROAD COMPANY et al.

**In Banc, July 13, 1907.**

1. **BENEFIT ASSESSMENT: Railroad Property.** Under the charter of St. Louis expressly providing that "all property" in the defined benefit district shall be subject to special taxes for the improvement of the streets, railroad rights of way, being private real property, are subject to an assessment for local street improvements. [Disapproving Sweaney v. Railroad, 54 Mo. App. 265.]

2. ———: ———: **Public Highway.** Nor is the right of way of a railroad company exempt from local improvements for benefits on the ground that both by the Constitution and statutes railways are declared to be public highways. A railroad is not a public highway within the meaning of these words used in the Constitution exempting "public highways" from taxation.

3. ———: ———: **Lien.** Nor will the lien of the special tax-bill be held to be invalid because the roadbed or right of way of the railroad company, or a part thereof, cannot be sold under execution to satisfy a judgment that may be rendered on the taxbill against the company. It is sufficient to hold that the taxbill is a lien. The matter of its enforcement will be determined when that question arises. But as a general rule "where there is a right there is a remedy."

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

REVERSED AND REMANDED.

*Hamilton Grover, Hickman P. Rodgers* and *Charles W. Bates* for appellant.

(1) One claiming exemption from taxation sustains the burden of proving specifically the authority by which the exemption is made. The charter of St. Louis, by authority of which this tax was levied and assessed, provides that "the remaining three-fourths of the cost so ascertained shall be levied and assessed

as a special tax upon all the property in the district to be defined and bounded as hereinafter provided." There is no exemption of railroad property or railroad right of way in the charter. Charter, art. 6, sec. 14. (2) While the Constitution of Missouri (art. 12, sec. 14) provides that "railways" are "public highways," such declaration has reference only to the objects and purposes mentioned in that section of the Constitution. A railway is not a "public highway" within any meaning of that word which would exempt it from taxation, either general or special. Constitution, art. 12, sec. 14; Nevada v. Eddy, 123 Mo. 546. (3) Land owned by a railroad company upon which is constructed its main line of tracks, constituting what is commonly called its "right of way," is subject to special assessment for local improvements. While this is an open question so far as the Supreme Court of Missouri is concerned, the weight of authority in other jurisdictions is overwhelmingly in favor of the liability of such property for special assessment and against its exemption therefrom. Nevada v. Eddy, 123 Mo. 546; Railroad v. People, 170 Ill. 228; Railroad v. Elmhurst, 165 Ill. 148; Rich v. Chicago, 152 Ill. 18; Railroad v. Joliet, 153 Ill. 649; Railroad v. Kankakee, 164 Ill. 604; Railroad v. Hays, 17 Ind. App. 265; Railroad v. Haum, 68 Ind. 567; Railroad v. Paving Co., 24 Ind. App. 114; Railroad v. Peterson, 5 Kan. App. 108; Railroad v. Connelly, 10 Ohio St. 159; Railroad v. Mt. Pleasant, 12 Iowa 112; In re Railroad, 32 Cal. 499; Ludlow v. Railroad, 78 Ky. 357; Railroad v. Jersey City, 42 N. J. 97; Railroad v. Barber Asphalt Pav. Co., 197 U. S. 430 (49 Law Ed. 819).

*Henry W. Blodgett* for respondents.

(1) The purposes for which countries and cities may levy and collect taxes, and the time and manner in which property may be assessed and taxed by municipal

authority, are under the absolute and sole control of the Legislature. State ex rel. v. Railroad, 9 Mo. App. 532; Railroad v. Watson, 61 Mo. 57; State ex rel. v. Severance, 55 Mo. 378. (2) The taxbill in controversy has no life except as a lien on the specific property therein described. In no other respect is there liability in law or in equity, as there can be no personal judgment in this State. Sweany v. Railroad, 54 Mo. App. 265. (3) No lien can exist or be enforced against a portion of the right of way of a railroad company. Sweany v. Railroad, 54 Mo. App. 265; Dunn v. Railroad, 24 Mo. 493; McPheeters v. Bridge Co., 28 Mo. 467; Schulenburg v. Railroad, 67 Mo. 442; Knapp v. Railroad, 74 Mo. 374; Cranston v. Trust Co., 75 Mo. 29; Ireland v. Railroad, 79 Mo. 572; Skrainka v. Rohan, 18 Mo. App. 345; Dugan v. Railroad, 43 Mo. App. 675. (4) The court has no power to determine that the assessment on a part of the tract of land here in question is valid. State ex rel. v. Railroad, 114 Mo. 1. (5) The tract of land here in question is a part of a public highway, and as such is not subject to this assessment.

BURGESS, J.—This is a suit on a special taxbill, for street improvement, issued by the city of St. Louis in favor of the plaintiff, against real property in said city owned in fee by the defendant railroad company, and upon which the other defendants in the case hold incumbrances by way of deeds of trust, part of which property is used by said defendant railroad company as part of its right of way over which it operates trains. The origin of the special taxbill was the enactment of an ordinance by the Municipal Assembly of the city of St. Louis, providing for the paving of Audubon avenue with vitrified brick, between Taylor and Euclid avenues, in said city.

The petition is in the usual form for the enforce-

ment of a special taxbill issued by the city of St. Louis for proportionate cost of construction of a street adjacent to the property of the defendant railroad company. It alleges the incorporation of the various defendants, their interests in the property, which is fully described, the particulars of the taxbill, notice of the issuance thereof, and concludes with prayer for judgment for the amount of the bill, with interest and costs, and that the same be declared a special lien against the real estate described.

The amended answer of the defendant railroad company, and of all the other defendants answering, sets forth the defenses: First, general denial; second, that the pretended assessment violates the Constitution and laws of Missouri and of the United States; third, exemption from assessment; fourth, that the land assessed is exempt because a part of a right of way, and, therefore, a public highway; fifth, exemption from said assessment, and any lien claimed thereunder, as a right, privilege, title and immunity guaranteed under the Constitution and laws of Missouri and of the United States, and the charter of the city of St. Louis.

It was admitted by counsel that the special taxbill sued on, No. 19590, dated November 7, 1903, and which was introduced in evidence without objection, was signed by the proper officers of the city of St. Louis, and that said taxbill remains unpaid; that notice of issuance of the said taxbill was duly given to defendants by plaintiff, and that on the fifth day of April, 1904, defendant, the Wabash Railroad Company, was duly served with notice to the effect that owing to its failure to pay the first installment of said taxbill within the time provided by law, plaintiff, as holder of said bill, had exercised its option and declared the entire bill to be immediately due and collectible.

The evidence shows that the main line of the Wabash railroad on which its trains pass eastward and

westward, run on and along the length of the strip of land in question, but that a portion of same, fronting twenty-five feet on Euclid avenue and extending eastwardly between parallel lines, at least two hundred and fifty feet, had no tracks upon it at the time of the assessment and trial. Defendant offered evidence showing that it had paid certain special taxbills arising out of the same street improvements and which were assessed against its ground fronting Euclid and Audubon avenues, laid off and platted as lots, and upon which no railroad tracks were laid, and which was not used for railroad purposes.

The cause was tried without a jury. At the conclusion of the evidence, plaintiff asked the court to declare the law as follows:

"The court, sitting as a jury, declares the law to be that the special taxbill offered and received in evidence makes a prima-facie case for plaintiff, and that it being admitted that defendants are the owners in fee of the property described in said taxbill, the mere fact that railroad tracks are laid on portions of said ground and constitute a part of the main line of the Wabash railway company between St. Louis and Kansas City, is no defense to plaintiff's cause of action;" which requested declaration of law the court refused to give, and plaintiff duly excepted.

At the instance of defendants, the court declared the law as follows: "The court gives, at the request of defendants, the instruction that, under the pleadings and all evidence, plaintiff is not entitled to recover," to the giving of which declaration of law plaintiff duly excepted.

At the same term of court judgment was rendered against plaintiff and in favor of defendants for costs, from which judgment plaintiff, after filing an unsuccessful motion for a new trial, appealed to this court.

Section 5, article 10, of the Constitution of Mis-, souri, provides: "All railroad corporations in this State, or doing business therein, shall be subject to taxation for State, county, school, municipal and other purposes, on the real and personal property owned or used by them, and on their gross earnings, their net earnings, their franchises and their capital stock."

While a distinction is made between local assessments and taxes levied for general revenue purposes, in that an assessment for a local improvement is not a tax within the meaning of the constitutional provision requiring uniformity of taxation, it is in a sense a tax, not, however, for the purpose of sustaining the government, but imposed upon individual property upon the theory that such property receives a special benefit different from the general one which the owner enjoys in common with others; in other words, an assessment for benefits.

That portion of section 14, article 6, of the amended charter of the city of St. Louis, under which the assessment in this case was made, is as follows: ·

"Special taxes for the improvements of streets, avenues and public highways shall be levied and assessed as follows: The total cost of grading and preparing the roadbed for the superstructure, placing foundation, curbing, guttering, roadway paving and crosswalks for the street embraced in the improvement, including all intersections of streets and alleys, shall be ascertained and one-fourth thereof shall be levied and assessed upon all the property fronting upon or adjoining the improvements, in the proportion that the frontage of each lot so fronting or adjoining bears to the total aggregate of frontage of all lots or parcels of ground fronting upon or adjoining the improvement, and the remaining three-fourths of the cost so ascertained shall be levied and assessed as a special tax upon all the property in the district to be defined and bound-

206 Sup—12

ed as hereinafter provided, in the proportion that the area of each lot or parcel of ground or the part of such parcel of ground lying within the district bears to the total area of the district, exclusive of streets and alleys.

"The districts herein referred to shall be established as follows: A line shall be drawn midway between the street to be improved and the next parallel or converging street on each side of the street to be improved, which line shall be the boundary of the district, except as hereinafter provided, namely: If the property adjoining the street to be improved is divided into lots, the district line shall be so drawn as to include the entire depth of all lots fronting on the street to be improved. If the line drawn midway as above described would divide any lot lengthwise or approximately lengthwise, and the average distance from the midway line so drawn to the nearer boundary line of the lot is less than twenty-five feet, the district line shall in such case diverge to and follow the said nearer boundary line. If there is no parallel or converging street on either side of the street to be improved, the district line shall be drawn three hundred feet from and parallel to the street to be improved; but if there be a parallel or converging street on one side of the street to be improved to fix and locate the district line, then the district line on the other side shall be drawn parallel to the street to be improved and at the average distance of the opposite district line so fixed and located. Provided, that if any property in a district established as herein provided is not liable to special assessment, the city shall pay the proportion of cost of the improvement which would have been assessed against such property. All of the property in the lots, blocks or tracts of land lying between the streets to be improved and the district lines established as above specified, shall constitute the district aforesaid."

It will be noted that this section expressly provides

that "all the property" in the district to be defined and bounded as therein provided shall be subject to special taxes for the improvement of streets, avenues and public highways. It exempts no property from its operation, and if the defendant railway company is exempt from the taxes sued for, the burden rests upon it to show why it is so exempt.

Under the law of this State, as declared by the higher courts, it is well settled that special assessments for local improvements are a constitutional exercise of the taxing power (Garrett v. St. Louis, 25 Mo. 505; Heman v. Allen, 156 Mo. 534; Barber Asphalt Paving Co. v. French, 158 Mo. 534; S. C., 181 U. S. 324), and that "it is within the power of the Legislature of the State to create special taxing districts, and to charge the cost of local improvements, in whole or in part, upon the property in said district, either according to valuation or superficial area of frontage." [Webster v. Fargo, 181 U. S. 394; Prior v. Construction Co., 170 Mo. 439; Asphalt Paving Co. v. French, supra; Spencer v. Merchant, 125 U. S. 345; Egyptian Levee Co. v. Hardin, 27 Mo. 495.] It has also been ruled that the provisions of article 10 of the Constitution of Missouri, in regard to taxation, are applicable only to taxation in the ordinary acceptation of the term, and are inapplicable to these special assessments (Farrar v. St. Louis, 80 Mo. 379, and cases cited), and the same rule is held as to sections 3, 4 and 11, as to the uniformity of taxation. [Farrar v. St. Louis, supra; St. Joseph to use v. Owen, 110 Mo. 445.]

It is insisted by defendant that the taxbill sued on has no life except as a lien upon the specific property described therein, and that unless the lien sought to be enforced can attach to the specific property described in the petition and taxbill there can be no recovery, because there can be no personal judgment.

In this State there is no personal liability of the

property-owner for special assessments, hence special taxes therefor are a charge against the property only. But it is contended that in the case at bar the lien would have to be enforced against a fractional part of a railroad right of way, which would be against public policy, and could not be done unless authorized by the Legislature in language not to be doubted. Such is the doctrine announced in the case of Sweany v. Railroad, 54 Mo. App. 265, upon which defendant relies as sustaining its position. This decision is bottomed upon Dunn v. Railroad, 24 Mo. 493; Abercrombie v. Ely, 60 Mo. 23; Schulenburg v. Railroad, 67 Mo. 442; Knapp v. Railroad, 74 Mo. 378, and Skrainka v. Rohan, 18 Mo. App. 344, with respect to which it is said: "These were cases mainly for the enforcement of mechanics' liens against railroad bridges, depot buildings and the like, based on the general provisions of the mechanics' lien law allowing such liens for labor and materials furnished for all *buildings, erections, improvements,* etc. It was admitted that the erections of the railroad might come under the terms buildings or improvements of the mechanics' lien law, but yet it was said to be against the policy of the law to permit the enforcement of a lien against a detached portion of a railroad. The railroad is declared public in its nature; that if a portion of its right of way was thus allowed to be taken its capacity for serving the public would be destroyed; hence it was said, 'that it is better to suffer a mischief which is peculiar to one than an inconvenience which may prejudice many.' [Dunn v. Railroad, 24 Mo. 495.]" Practically the same rule is announced in McCutcheon v. Railroad, 72 Mo. App. 271.

Where words of general description are used in reference to taxation, such as "all property," they include everything of that kind not expressly, or by necessary implication, excepted. [State ex rel. v. Railroad, 153 Mo. 157.] So that there can be no doubt that the

words "all property," as used in the city charter, include all railroad property; and railroad rights of way being private real property, they are, unless specially exempted, subject to assessment for local improvements under the terms of section 14 of article VI of the amended charter of the city of St. Louis.

In the case of Railroad v. Connelly, 10 Ohio St. 159, the question was, whether lands which had been condemned for railroad purposes, before the making of a street improvement, upon which lands the railroad track was built after the improvement was completed, and which lands crossed the improved street at right angles, were liable to assessment for the improvement. It was held that the assessment was valid. The court, after stating that railroad tracks are liable for general taxes, said:

"If railroad tracks are taxable for general purposes, it is difficult to perceive why they should not be subject also to special taxes or assessments. The company, to advance its own interests, has seen fit to appropriate to its use ground within the corporate limits of the city of Toledo, and over which that city had the power of making assessments to defray the expenses of local improvements, and why should not the company be held to have taken it *cum onere?* A citizen would scarcely claim exemption because he had devoted his lot to uses which the improvement could not in any way advance, and we see no good reason why a railroad company should be permitted to do so. . . . But it is said that assessments, as distinguished from general taxation, rest solely upon the idea of equivalents, a compensation proportioned to the special benefits derived from the improvement, and that, in the case at bar, the railroad company is not, and in the nature of things cannot be, benefited by the improvement. It is quite true that the right to impose such special taxes is based upon a presumed equivalent; but it by no means

follows that there must be in fact such full equivalent in every instance, or that its absence will render the assessment invalid. . . . No general rule, therefore, could be laid down which would do equal and exact justice to all. The Legislature have not attempted so vain a thing, but have prescribed two different modes in which the assessment may be made, and left the city authorities free to adopt either. The mode adopted by the council becomes the statutory equivalent for the benefits conferred, although in fact the burden imposed may greatly preponderate. In such case, if no fraud intervene, and the assessment does not substantially exhaust the owner's interest in the land, his remedy would seem to be to procure, by a timely appeal to the city authorities, a reduction of the special assessment and its imposition, in whole or in part, upon the public at large.''

The same rule is announced in the case of Railroad v. Hanna, 68 Ind. 562.

In the case of Chicago v. Baer, 41 Ill. 306, it is held that a street railway was subject to assessment for the improvement of the street upon which it was located.

In Railroad v. Chicago, 90 Ill. 573, it was held that the right of way, right of occupancy, franchise and interest in a street railway company having a track in a street under a charter of the Legislature, and under a contract with the city council, is a property, and as such is liable to be assessed for benefits in the widening of the street upon which it runs its cars the same as any other property benefited by the proposed improvement. To the same effect is Railroad v. Chicago, 176 Ill. 501.

In Railroad v. Peterson, 51 Pac. 290, it is held that the right of way and switch yards of a railroad company are liable for an assessment to contribute to the expense of local improvements such as sewers and the

like. The same rule is announced in Railroad v. East Lake Fork Drainage Commissioners, 129 Ill. 417; Railroad v. East Lake Fork Drainage Commissioners, 134 Ill. 389.

It was held in the case of Railroad v. Barber Asphalt Paving Co., 76 S. W. 1097, that the right of way of the railroad company is liable to assessment for a street improvement. See, also, Figg v. Railroad, 75 S. W. 269; Orth v. B. B. Park & Co., 79 S. W. 206; Commissioners of Chatham County v. Seaboard Air Line, 133 N. C. 216; Railroad v. Lindquist, 119 Iowa 144.

In City of Ludlow v. Trustees of the Cincinnati Southern Ry. Co., 78 Ky. 357, suit was brought by the contractor, J. W. Rich, against the appellant and the trustees of the Cincinnati Southern Railway Co., to recover an assessment made by the city upon a lot belonging to the trustees, and abutting on the improved street. The trial court held that the lot was necessary for the operation and maintenance of the railway, and refused to subject it to the payment of the claim, and rendered judgment against the city. Upon appeal, the correctness of that ruling was questioned. The court said: "While assessments of this character, as distinguished from general taxation, rest upon the basis of benefits or presumable benefits to the property assessed, it is not essential to their validity that actual enhancement in value, or other benefit to the owner, shall be shown. The passage of the ordinances by the city council, under the power granted in the charter, is conclusive of the propriety of the improvement, and of the question of benefit to the owners of abutting property. [Railroad v. Connelly, 10 Ohio 164.] Absolute equality in the distribution of such burdens cannot be attained. An approximation to equality is all that is possible, but in reaching this point the present or prospective use of the property cannot enter into the calculation." It was held by the court in that case that the city of Ludlow,

having levied an assessment upon all real estate lying upon a certain street within its limits for the purpose of improving the street, a lot upon the street owned by the appellee, the Cincinnati Southern Railway Co., was subject to the assessment, and that the fact that the lot was the property of a railway company, and used for railroad purposes, furnished no more reason why it should be exempted from an assessment than if it belonged to a natural person.

In Railroad v. Barber Asphalt Paving Co., 197 U. S. 1. c. 433, it is said:

"There is a look of logic when it is said that special assessments are founded on special benefits and that a law which makes it possible to assess beyond the amount of the special benefit attempts to rise above its source. But that mode of argument assumes an exactness in the premises which does not exist. The foundation of this familiar form of taxation is a question of theory. The amount of benefit which an improvement will confer upon particular land, indeed whether it is a benefit at all, is a matter of forecast and estimate. In its general aspects at least it is peculiarly a thing to be decided by those who make the law. The result of the supposed constitutional principle is simply to shift the burden to a somewhat large taxing district, the municipality, and to disguise, rather than to answer, the theoretic doubt. It is dangerous to tie down Legislatures too closely by judicial constructions not necessarily arising from the words of the Constitution. Particularly it is important for this court to avoid extracting from the very general language of the Fourteenth Amendment a system of delusive exactness in order to destroy methods of taxation, which were well known when the amendment was adopted, and which it is safe to say that no one then supposed would be disturbed. . . .

"That, apart from the specific use to which this

land is devoted, land in a good sized city generally will
get a benefit from having the streets about it paved, and
that this benefit generally will be more than the cost,
are propositions which, as we have already implied, a
Legislature is warranted in adopting. But, if so, we are
of opinion that the Legislature is warranted in going
one step further and saying that on the question of bene-
fit or no benefit the land shall be considered simply in
its general relations and apart from its particular use.
On the question of benefits the present use is simply a
prognostic, and the plea a prophecy. If an occupant
could not escape by professing his desire for solitude
and silence, the Legislature may make a similar desire
fortified by structures equally ineffective. It may say
that it is enough that the land could be turned to pur-
poses for which the paving would increase its value.
Indeed, it is apparent that the prophecy in the answer
cannot be regarded as absolute, even while the present
use of the land continues—for no one can say that
changes might not make a station desirable at this
point; in which case the advantages of a paved street
could not be denied. We are not called upon to say
that we think the assessment fair. But we are com-
pelled to declare that it does not go beyond the bounds
set by the Fourteenth Amendment of the Constitution
of the United States."

Judge ELLIOT, in his work on Railroads, vol. 2, sec.
786, says: "There is a conflict in the adjudicated cases
as to whether or not the right of way of a railroad com-
pany is subject to local assessment. The question has
been discussed in a great number of instances, and dif-
ferent conclusions reached in apparently similar cases.
The latest authorities on the subject, however, recog-
nize what we believe to be the true rule, and that is, that
where the right of way receives a benefit from the im-
provements for which the assessment is levied, and
there is no statute exempting the railroad company

from local assessments, in clear and unequivocal terms, it is subject to assessment.''

After discussing the adjudications which hold that the right of way of a railroad company may be assessed for local improvements, GRAY, in his work on Limitations of Taxing Power and Public Indebtedness, section 1913, says:''On the other side are several respectable authorities. If they be closely examined, however, it will be found that the question was one of fact in the particular cases.'' The author then cites City of Bridgeport v. Railroad, 36 Conn. 255; Railroad v. Grand Rapids, 106 Mich. 13; Philadelphia v. Railroad, 33 Pa. St. 43; Railroad v. Philadelphia, 88 Pa. St. 424; Borough of Mt. Pleasant v. Railroad, 138 Pa. St. 365; Allegheny City v. Railroad, 138 Pa. St. 375; Railroad v. Ottumwa, 112 Iowa 300; Railroad v. Milwaukee, 89 Wis. 506; Railroad v. City of Elizabeth, 37 N. J. L. 330; Railroad v. City of Passaic, 54 N. J. L. 340; Boston v. Railroad, 170 Mass. 95. In each of these cases the question was one of fact, that is, absence of benefit to the property against which the assessment was made.

Nor is the right of way of defendant exempt from local assessment for benefits upon the ground that by section 14, article 12, of the Constitution of Missouri, and sections 1127 and 1128, Revised Statutes 1899, railways are declared to be public highways. In passing upon this question in City to use v. Eddy, 123 Mo. l. c. 60, GANTT, P. J., speaking for the court, said:

'' 'The declaration in the Constitution that railways in this State are ''public highways'' in the connection in which it appears, obviously was not intended to throw them open as thoroughfares for pedestrians. Its object was to lay a foundation for certain kinds of legislative regulation of railways, but not to change the nature of the railroad property, or to divert it from the general purpose for which it was designed.' Nor is it in any sense a warrant to use the cars of a railway company

without the payment of reasonable tolls and in defiance of the management and regulation of the company. . . .

"Neither is the position of defendants true, that, because they are, by the Constitution, 'public highways,' all of their property is exempt from special assessment, just as a public state or county road would be.

"The railroad of the company is not in this extreme sense the work of the State. The roadbed and the depot grounds are not public property managed by the company as an agent of the State. On the contrary, the company is a private corporation; its stock is the private property of its stockholders, who, as such, own its property. Because its function is to serve the public as a public carrier the State has invested it with the power of eminent domain and reserved to itself the power of visitation and regulation to protect the public so as to secure reasonable fares and tariffs and proper police regulation, but the stockholders, not the State, pay for its property and easements, and it becomes their property.

"The State taxes all of its property for general governmental purposes, so that, while for many beneficial purposes it is a 'highway', it is misleading to speak of it as a highway in the strict sense of exemption from taxation, because this power is reserved to the State, and is constantly exercised over all of its property. The courts have differed widely in their opinions on this subject, even as to taxing the right of way for local improvements, but the case in hand does not call for an expression on the last proposition."

If the right of way is taxable for general purposes, it is somewhat difficult to see why it may not be assessed for local improvements from which it is presumed to derive some special benefits not enjoyed by the general public.

If an improvement is to be made, the benefit of which is local, the property benefited thereby should, upon every principle of justice, bear the burden. While the few ought not to be taxed for the benefit of the whole, neither should the whole be taxed for the benefit of the few. General taxation for a mere local purpose is manifestly unjust. It imposes a burden upon those not benefited by the improvement. The ordinance having expressly imposed the burden upon "all property" in the district specially benefited by the improvement, without exempting any, the question is whether an exemption ought to be implied by the courts in favor of the railroad right of way. We think not.

Our conclusion is that, according to the decided weight of authority and the better reason, the right of way of the defendant was properly assessed for local improvements, and that the declaration of law asked by plaintiff should have been given, and the declaration of law given at the instance of defendant refused. It follows that in so far as the case of Sweany v. Railroad, 54 Mo. App. 265, is taken as authority for the contention that the right of way of the defendant company cannot be charged with the lien of the special taxbill sued on for street improvements made under the charter of the city of St. Louis, it is overruled.

As to the proposition urged against this lien, that the roadbed or right of way of the defendant, or a part thereof, could not be sold under execution to satisfy any judgment which may be rendered in favor of plaintiff in this case, it is not necessary for us to express an opinion at this time. What we do hold is that, under the charter and ordinance, the taxbill sued on in this case is a lien against that part of the right of way of the defendant company described in the taxbill. We do not feel called upon to determine how such judgment can be enforced, but it is probable that counsel will be able, if necessary, to accomplish such result. As a general

rule, "where there is a right, there is a remedy." [2 Dillon's Municipal Corporations (4 Ed.) sec. 822; McInery v. Reed, 23 Iowa 410; Lima v. Cem. Association, 42 Ohio St. 128; New York v. Colgate, 12 N. Y. 140.] And this case, we think, forms no exception to that rule. Our conclusion is that the judgment should be reversed and the cause remanded. It is so ordered. *Gantt, C. J., Valliant, Graves* and *Woodson, JJ.,* concur; *Lamm* and *Fox, JJ.,* dissent.